**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHRISTOPHER S. MEHAFFIE** | § | CASE NO**. 09-31689-H3-13** |
| Debtor | § | (Chapter 13 |
| | § | |
| APPLEWAY EQUIPMENT LEASING, INC | § | ADV.  NO._____ |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| CHRISTOPHER S. MEHAFFIE | § | |
| | § | |
| Defendant | § | |

**ORIGINAL COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT UNDER 11 U.S.C.  § 523 AND FOR DAMAGES**

Comes now the Plaintiff, APPLEWAY EQUIPMENT LEASING, INC. ("Appleway" or "Plaintiff"), and files this Complaint against the above-captioned Debtor, respectfully stating as follows:

**SUMMARY**

1.      The Debtor submitted forged copies of cashers' checks, personal checks, cash receipts and other documents to Appleway.  These fake documents caused Appleway significant losses.  The Debtor represented he was a "VP" of his father's company at the time.  He conspired with the company and used it as a sham to perpetrate a fraud.  This Complaint seeks damages for the frauds, breaches of fiduciary duty and other acts of Debtor as well as the judicial determination that debts owed hereunder are non-dischargeable.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction by virtue of 28 U.S.C. § 1334.   This is a core

proceeding under 28 U.S.C. § 157(b)(2) (I).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 because the main case is pending in this District.

**PARTIES**

3.      The Plaintiff, Appleway Equipment Leasing, Inc., is a creditor and party in interest in the above-captioned bankruptcy estate.

4.      The Defendant, Christopher S. Mehaffie ("Defendant" or "Debtor"), is the Debtor in the above-referenced bankruptcy case and may be served with process pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(9) by serving a copy of the summons and complaint to him at 3806 Seashore Circle, Seabrook, Texas 77586, with a copy to his attorney, Karen R. Emmott, 4615 Southwest Freeway, Suite 500, Houston, Texas 77027, via first class mail, postage prepaid.

**FACTUAL BACKGROUND**

5.      The Debtor filed Chapter 13 bankruptcy on March 11, 2009.  Plaintiff had already sued Defendant for fraud at the time the case was filed.  The Automatic Stay prevented continued prosecution of the original fraud case in Washington State.  By this Complaint, Appleway seeks to determine the damages incurred by the Debtor's frauds and that the debt incurred thereby is nondischargeable under several subdivisions of 11 U.S.C. §523(a).

6.      Plaintiff decided to enter into each Assignment of Motor Vehicle Retail Installment Sales Contract (purchasing a Motor Vehicle Retail Installment Sales Contract and other assigned documents) on those terms and conditions stated in said written contracts and all documents between the Assignor and the Buyer, specifically including representations of the Assignor as to the down payments received for the vehicle.

7.      Defendant warranted by his signature that as the Assignor, as defined within the Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc., that all representations and documents were truthful and accurate.

8.      Defendant Chris Mehaffie represented to Plaintiff, in writing, that he has served in various capacities for D & L Truck Center USA, Inc. ("D&L") including, but not limited to, a) Finance Manager; b) V.P.; c) Finance Director; d) VP and Fin. Mgr.; F& I Manager.   D&L is now known as D&M Truck Center USA ("D&M), using the same address, phone, personnel, continuing in the same business, without formal transfer of assets.  D&M is the same as D&L.

9.      Defendant on or about January 26, 2005, and on or about April 15, 2008 completed and caused to be delivered to Plaintiff a Vendor Profile that disclosed Chris Mehaffie as the Primary Contact or F & I Mgr. for D&L.   Appleway relied on the representations in those profiles, one of which originally described D&L as a partnership.

10.      **Alter Ego and General Partnership**.   D&L did not observe corporate formalities, was undercapitalized, closely held, and was used at all times by Defendant as a sham and alter-ego to perpetrate the frauds alleged herein against Appleway.   Defendant Chris Mehaffie acted at all times as the alter-ego and/or general partner of his father's company, D&L. Whenever he acted, it was within the scope of his authority to carry out his duties in the manner in which said duties were performed, and/or such activities were ratified.   Defendant used D&L as a sham to defraud Appleway, as discussed herein.

11.      **Conspiracy to Commit Fraud and Breaches of Duty**.   D&L (and its principals), which included Defendant Chris Mehaffie, Defendant, the principals, Don Mehaffie and Larry Marsh, and perhaps others conspired together to form a systematic scheme by which Plaintiff would be defrauded.  The purpose of the conspiracy was to induce the Plaintiff into

entering into those numerous contracts titled: *Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc.*   The means by which the scheme was carried out was that customer down payments, as required by the *Motor Vehicle Retail Installment Sales Contract and Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc*., were in the form of falsified or altered financial documents, namely personal checks, cashier's checks, and/or cash receipts.   Plaintiff had no basis upon which to know that said financial instruments had been altered or falsified.   Plaintiff entered into said Assignments on the basis of the representations and documents provided by the Defendant in connection with his conspirators.   Plaintiff has been damaged as a result of this Civil Conspiracy.

12.   **<u>Necessary Proof of Down Payment Falsified and Sent to Appleway</u>.** Defendant was aware that certain bank instruments, including but not limited to personal checks and cashier's checks, had been falsified and/or altered prior to delivering copies of said instruments to Plaintiff as evidence of down payments.

13.   Defendant caused to be delivered to Plaintiff, in certain specific transactions, cash receipts that did not accurately reflect the amount, if any, of the actual cash down payment paid by the customer.

14.   Defendant benefited from each transaction that resulted in sale of a Motor Vehicle Retail Installment Sales Contract by means of an Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc.

15.   Appleway was at all times material in the business of purchasing Motor Vehicle Retail Installment Sales Contracts involving commercial equipment purchases by customers.

16.    The purchase of said Motor Vehicle Retail Installment Sales Contract was pursuant to a written contract entitled: Assignment Of Motor Vehicle Retail Installment Sales Contracts To Appleway Equipment Leasing, Inc.

17.    Appleway requires that a customer pay the requisite down payment, as set forth in the Approval Notice and related documents relayed to Defendant by Plaintiff.

18.    Plaintiff's source of funding used to finance its transactions with Defendant was, and is, one or more federally insured banks.

19.    Defendant was aware that a down payment was a written condition precedent to Plaintiff agreeing to purchase each Motor Vehicle Retail Installment Sales Contract.

20.    Defendant communicated with Plaintiff, and delivered copies of certain specified documents by means of the instrumentalities of interstate commerce, namely: a) telephone; b) facsimile; c) e-mail; d) Federal Express; and e) U.S. mail.

21.    Defendant routinely made these communications with Appleway at various times between 2004 and 2008.  Defendant's communications were interstate between Texas and Washington.

22.    **The Romero Fraudulent Transaction (fake cashier's check)**.  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 Freightliner VIN #1FUPCSZB2YLH47143 to Manuel Romero.

23.    The salesperson for the Romero transaction was Defendant Chris Mehaffie, VP.

24.    Defendant represented to Plaintiff that a down payment had been paid by Romero in the amount of $12,000.00 by delivery of a copy of cashier's check, issued by Prosperity Bank, check #397858.

25.     The cashier's check copy was a deliberate fake.  The copy had been altered and submitted by Defendant and his partners to Appleway.  At the time it was submitted to Appleway, Defendant knew the document was not a copy of a real check.  Indeed, to create the fake check copy, he had used a cashier's check copy from his file issued years before by Daniel Antich to D&L Truck.  Defendant submitted the fake cashier's check copy to Appleway to induce them to acquire the Contract and profit his partnership.

26.     In reasonable reliance on the false cashier's check, Plaintiff was induced to purchase the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Freightliner purchased by Romero, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

27.     **The Amaro Fraudulent Transaction (fake cashier's check)**  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* to Armando Amaro a 2000 Freightliner FLD 12064T Conventional VIN #1FUPDXYB8YLA90084 on or about April 30, 2008.

28.     The salesperson for the Amaro transaction was Chris Mehaffie, Finance Manager.

29.     Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* relating to said 2000 tractor/truck purchased by Amaro pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract*, and related documents.

30.     Plaintiff required that Amaro pay a down payment to D & L in the amount of $8,200.00.

31.     Defendant provided to Plaintiff proof of a down payment in the amount of $8,200.00 by means of a cashier's check dated May 4, 2008 (Sunday) drawn on the Fallcreek Branch of Capital One Bank.

32.     The copy of the cashier's check was a fake.  Capital One Bank did not issue said cashier's check as represented by Defendant to Plaintiff.

33.     Said cashiers check was altered or fabricated for the purpose of causing Plaintiff to purchase the Amaro contract.

34.     Defendant (and those partners and accomplices with whom he worked) intended that Plaintiff rely on the fake copy of the cashier's check in purchasing the Contract on the Amaro Truck.  Defendant has been damaged by this fraud because the truck has declined substantially in value and the contract has no value.

35.     **Drennon Transaction (fake check)**     Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2001 Peterbilt 387 tractor/truck, VIN #1XP7DU9X01D565433 to Brian Drennon on or about March 8, 2006.

36.     The salesperson for the Drennon transaction was Defendant Chris Mehaffie, Finance Manager.

37.     Defendant represented to Plaintiff that a down payment had been paid by Drennon in the amount of $9,500.00 by delivery of a copy of check #1215 drawn on Compass Bank.

38.     The check copy was altered.  The check copy was altered, though evidence of the alteration requires expert analysis to detect.  Defendant and those partners and conspirators working with him altered the check copy and submitted the false document to Appleway to induce reliance.

39.     In reasonable reliance upon the false representation, Plaintiff was induced to purchase the *Motor Vehicle Retail Installment Sales Contract* of said 2001 tractor/truck purchased by Drennon pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

40.     Defendant (and his partners and conspirators) benefited as a result of the assignment of said *Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

41.     **Ramos Fraudulent Transaction (fake personal check).**  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 1999 Kenworth W900L VIN #1XKWDB9X2XR816387 to Juan Ramos.

42.     The salesperson for the Ramos transaction was Defendant Chris Mehaffie, Finance Manager.

43.     Defendant represented to Plaintiff that a down payment had been paid by Ramos by means of a personal check in the amount of $13,875.00, drawn on the Bank of America.

44.     The personal Bank of America check was not authentic.  The copy had been altered and submitted by Defendant and his partners to Appleway.  At the time it was submitted, Defendant knew the document was not a copy of a real check but intended that Appleway rely on the false document.

45.     In reasonable reliance on this false documentation, Plaintiff was induced to purchase the *Motor Vehicle Retail Installment Sales Contract* of said 1999 Kenworth W900L purchased by Juan Ramos, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc*., and related documents.

46.     As a result of this fraud, Plaintiff has been injured as the contract is worthless and the collateral missing or of little value.

47.     **West Fraudulent Transaction (altered check copy)**.  Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 2001 Freightliner, VIN # 1FUJAPCG61LH05951, to Jeffery H. West.

48.     The salesperson for the West transaction was Chris Mehaffie, Finance Manager.

49.     Plaintiff required that West pay a down payment to D & L in the amount of $9,500.00.

50.     Plaintiff received a photocopy of check # 606 drawn on the Hibernia National Bank Account maintained in the name of Mr. West.

51.     Defendant represented to West that a down payment was to be paid by West in the amount of $4,650.00, which was paid by means of check #606 drawn on Hibernia National Bank.

52.     Defendant altered or caused to be altered said check # 606 to cause Plaintiff to believe that West had actually paid the required down payment of $9,500.00.  The alteration was carefully done so that it would only be discernable by an expert.  Defendant intended that Appleway rely on the false check copy and acquire the Contract.

53.     In reasonable reliance on the altered check, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* relating to said 2001 tractor/truck purchased by West, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* To Appleway Equipment Leasing, Inc, and related documents.

54.   **The Rodriguez Fraudulent  Transaction (altered check)**.  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2002 International VIN #3HSCEAXR72N041753 to Eunice Rodriguez on or about July, 12, 2006.

55.   The salesperson for the Rodriguez transaction was Defendant Chris Mehaffie, Vice President and Finance Manager.

56.   Defendant represented to Plaintiff that a down payment had been paid by Rodriguez in the amount of $15,000.00 by delivery of a copy of a personal check # 6318 drawn on JPMorgan Chase Bank.  .

57.   The check copy was fake.  Defendant and those acting with him knew that the check copy submitted to Appleway was fake.  They intended that Appleway would rely on the fake document.

58.   The actual check had been made out for only 6,000.  The alteration to the check was carefully done and only apparent upon expert examination.  It was submitted to Appleway to induce reliance and the purchase of the contract on the Motor Vehicle Sales Contract.

59.   Based on the false check copy, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2002 International purchased by Rodriguez, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

60.   **First Rhodes Fraudulent Transaction**.   Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 Lufkin VIN #1L01B4B22Y1146418 to Wiley Rhodes.

61.     The salesperson for the Rhodes transaction was listed Defendant Chris Mehaffie, Finance Manager, who was also acting as the general partner or alter-ego of D&L Trucking.

62.     The power of attorney notary name "Maria Diaz" was actually signed by Chris Mehaffie.  Defendant represented to Plaintiff that a down payment had been paid by Rhodes in the amount of $5,000 by delivery of a copy of a cash receipt #344410.  Upon information and belief, that representation was also false.

63.     Defendant knew the true character  of the representation when it was made to the Plaintiff and intended that the Plaintiff rely on that representation.  The Defendant has not accounted for the cash.

64.     In  reasonable reliance on the false check copy, Plaintiff agreed to purchase the *Motor Vehicle Retail Installment Sales Contract* of said 2000 tractor/truck purchased by Rhodes pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc*., and related documents.

65.     Defendant, both individually and in his capacity as a conspirator with, general partner of and/or alter-ego of D&L, benefited as a result of the sale of said *Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

66.     **<u>Second Rhodes Fraudulent Transaction</u>.**  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2001 Transcraft Flatbed VIN #1TTF4820611066711 to Wiley Rhodes.

67.     The salesperson for the Rhodes transaction was Defendant Chris Mehaffie, Finance Manager.

68.     Defendant represented to Plaintiff that a down payment had been paid by Rhodes in the amount of $5,000 by delivery of a copy of a cash receipt #344409.

69.     Upon information and belief, the cash was not received and/or not accounted for.

70.     Appleway reasonably relied upon this representation to induce it to purchase the *Motor Vehicle Retail Installment Sales Contract* of the said 2001 Transcraft flatbed purchased by Rhodes pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

71.     Defendant benefitted from the transaction, both directly and through the conspiracy/partnership.

72.     **The Russell Fraudulent Transaction (fake notary seal).**  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 Freightliner truck/trailer VIN #1FUYSSEB6YLA80798 to Curtis Russell.

73.     The salesperson for the Russell transaction was Defendant Chris Mehaffie, Finance Manager.

74.     Defendant represented to Plaintiff that a down payment had been paid by Russell in the amount of $17,000 by delivery of copies of two cash receipts, #344225 and #344226.  The power of attorney signature of the notary was forged by Chris Mehaffie.  Upon information and belief, the cash was never received or accounted.

75.     The forged notary signature and cash receipts were false representations and known to be false when made. The cash was never accounted for.

76.     In reasonable reliance on the false representations, Plaintiff agreed to purchase the *Motor Vehicle Retail Installment Sales Contract* of said 2000 tractor/truck purchased by

Russell pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

77.     Defendant benefited as a result of the sale of said Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc., and related documents.

78.     **The Floyd Questionable Transaction**.  Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 2000 Peterbilt VIN #1XP5DR9X3YD510957 to Michael Floyd.

79.     The salesperson for the transaction was Defendant Chris Mehaffie, Finance Director.

80.     Defendant represented to Plaintiff that a down payment had been paid by Floyd in the amount of $15,000.00 by delivery of a copy of draft (check) #4471 drawn on Texas Dow Employees Credit Union.

81.     Upon information and belief the check copy is fake and the notarial signature on Mr. Floyd's guarantee was false and forged by defendant and those conspiring with him.

82.     In reasonable reliance upon these representations, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Peterbilt purchased by Michael Floyd pursuant to a written Assignment of Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc., and related documents.

83.     **The Ayala Fraudulent Transaction**.  Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 2001 Peterbilt VIN #1XP7DB9XX1D553553 to Erasmo Ayala.

84.     The salesperson for the Ayala transaction was Defendant Chris Mehaffie, Finance Manager.

85.     Defendant represented to Plaintiff that a down payment had been paid by Ayala in the amount of $9,500.00 by delivery of a copy of a personal check for $9,500.00 drawn on Wells Fargo Bank.

86.     Said check drawn on Wells Fargo Bank in the amount of $9,500.00 was never presented by Defendant to a bank for payment.  The "check" copy was presented as a document presented for payment by Defendant (and those conspiring with him) and knowingly false representations when made.

87.     Defendant manufactured the false document and knew it was a false representation when he forwarded it to Appleway.

88.     The signature of Lorena Ayala was placed on the General Guaranty, which was notarized by Maria M. Diaz.  Upon information and belief, this was also a forgery, knowingly altered by Defendant and those acting with him, and known to be false when forwarded to Appleway.

89.     In reasonable reliance on these false documents, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2001 Peterbilt purchased by Ayala pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

90.     Plaintiff has been injured by this reliance because the Truck is in default and has lost value.

91.     **The Fajardo Transaction**   Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 International 2400, VIN #2HSCNASR9YC058572 to Juan Fajardo.

92.     The salesperson for the Fajardo transaction was Defendant Chris Mehaffie, Finance Director.

93.     Defendant represented to Plaintiff that a down payment had been paid by Fajardo by cashier's check in the amount of $12,500, drawn on U.S. Bank.

94.     Upon information and belief, the "check' copy was faked, a false document created by Mr. Mehaffie and his partners to induce reliance by Appleway.

95.     In reasonable reliance on the documentation, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 International 2400 purchased by Fajardo pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

96.     **The Green Transaction.**   Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 Freightliner VIN #1FUYDSEBOYPB20747 to Clarence Green.

97.     The salesperson for the Green transaction was Defendant Chris Mehaffie, its Finance Manager.

98.     Defendant represented to Plaintiff that a down payment had been paid by Green by means of a Washington Mutual Check for $6,000.

99.     Upon information and belief, the "check" was fake, created to induce reliance by Appleway.  The document was sent to Appleway by Mehaffie, who knew its true character when sent.

100.    In reasonable reliance upon these false documents, Plaintiff purchased the Motor Vehicle Retail Installment Sales Contract of said 2000 Freightliner purchased by Green,

pursuant to a written Assignment of Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc., and related documents.

101. **The Lemanski Transaction**. Defendant sold a 1999 Peterbilt 379 VIN #1XP5DB9X2XD484972 to James Lemanski, Jr. using an installment sales contract that was assigned to Appleway.

102. The salesperson for the Lemanski transaction was Defendant Chris Mehaffie, Finance Manager.

103. Defendant represented to Plaintiff that a down payment had been paid by James Lemanski, Jr. in the amount of $9,500.00 by delivery of a copy of a personal check #1922, drawn on Hibernia Bank.

104. Upon information and belief, the "check" was fake, created to induce reliance by Appleway. The document was sent to Appleway by Defendant and those partners or co-conspirators acting with him, who knew its true character when sent to Appleway.

105. In reasonable reliance on this document, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 1999 Peterbilt 379 purchased by James Lemanski, Jr. pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

106. **The Washington Fraudulent Transaction (check never presented and fake notary seal).** Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 2000 Freightliner VIN #1FUYDSZB9YDF91114 to Leon Washington.

107. The salesperson for the Washington transaction was Defendant Chris Mehaffie, Finance Director.

108.    Defendant represented to Plaintiff that a down payment had been paid by Washington in the amount of $8,500.00 drawn on Sterling Bank by delivery of a copy of a personal check #333.

109.    The Washington personal check # 333 drawn on Sterling Bank was not presented by Defendant to a bank for payment. The Check was not actually deposited as represented and Defendant represented that it had been.   The representation was false when Defendant submitted the documents to Appleway.

110.    Defendant caused the notarized signature of Marcelia Washington to be placed on the General Guarantee in the Leon Washington transaction, to which Ms. Washington had not actually authorized. The notary public who notarized the signature of Marcelia Washington was listed as Maria Diaz.  However, but she did not notarize the document.

111.    In reasonable reliance on these false documents, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Freightliner purchased by Washington, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

112.    **The Dean Transaction**.  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 Freightliner VIN #1FUYDSEB4YPB20752 to Dewey Dean.

113.    The salesperson for the Dean transaction was Defendant Chris Mehaffie, Finance Manager.

114.    Defendant represented to Plaintiff that a down payment had been paid by Dean in the amount of $8,000.00 by delivery of a copy of a cash receipt #344775.

115.    Upon information and belief, Defendant caused the signature of Rose G. Dean to be placed on the General Guarantee in the Dean transaction.

116.    Upon information and belief, the "check" was fake, created to induce reliance by Appleway.  The document was sent to Appleway by Defendant and those partners or co-conspirators acting with him, who knew its true character when sent to Appleway.

117.    In reasonable reliance on the false documents, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Freightliner purchased by Dean pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

118.    **The Flores Fraudulent Transaction (cash down payment).**  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 1999 Freightliner VIN #1FUYDSEB7XP987932 to Chris Flores.

119.    The salesperson for the Flores transaction was Defendant Chris Mehaffie, F&I Manager.

120.    Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Freightliner purchased by Flores, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc.*, and related documents.

121.    Defendant represented to Plaintiff that a down payment had been paid by Flores in the amount of $5,000.00 by delivery of a copy of a cash receipt #344459 signed by Maria Diaz.

122.    The $5,000.00 down payment, as represented by Defendant to Plaintiff as having been paid by Flores, was (upon information and belief) not the actual amount paid by Flores. Appleway reasonably relied on those documents and purchased the *Motor Vehicle Sales Contract* as a result.

123.     Defendant benefited as a result of the sale of said of *Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

124.     **The Green Fraudulent Transaction**  Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 1999 Peterbilt 379X, VIN #1XP5DB9XXXD477994 to Charles Green.

125.     The salesperson for the Green transaction was Defendant Chris Mehaffie, Vice President.

126.     Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 1999 Peterbilt 379X purchased by Green pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* To Appleway Equipment Leasing, Inc. and related documents.

127.     Defendant represented to Plaintiff that a down payment had been paid by Green in the amount of a $12,000.00 by means of a personal check #136 drawn on Chase Bank.

128.     Upon information and belief, the check copy was faked, created to induce reliance by Appleway.  The document was sent to Appleway by Defendant and those partners or co-conspirators acting with him, who knew its true character when sent to Appleway.

129.     **The Rincon Fraudulent Transaction (cash receipt)**.  Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 2000 Freightliner, VIN #1FUYDSEBXYLG36217 to Felix Rincon, Jr.

130.     The salesperson for the Rincon transaction was Defendant Chris Mehaffie, VP and Finance Manager.

131.     Defendant represented to Plaintiff that a down payment had been paid by Rincon in the amount of $9,000.00 by delivery of a copy of a cash receipt #344424, signed by Maria Diaz.

132.     Upon information and belief, the cash receipt was not accurate and/or the cash was never accounted for.  Defendant knew that the representation was false when transmitted to Appleway.  Defendant intended that Appleway rely on the document.  Appleway reasonably relied on the document.

133.     In reasonable reliance on the existence of a cash down payment as represented, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Freightliner purchased by Rincon pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

134.     **The Seastrunk Fraudulent Transaction (fake cashier's check).**  Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 2000 Freightliner, VIN #1FUPCSZB7YLB89001 to Orlando Seastrunk.

135.     The salesperson for the Seastrunk transaction was Defendant Chris Mehaffie, VP and Finance Director.

136.     Defendant represented to Plaintiff that Seastrunk had paid a down payment in the amount of $9,000.00 by delivery of a copy of a cashier's check issued by Prosperity Bank.

137.     Upon information and belief, the "check" copy was altered or forged, created to induce reliance by Appleway.  The document was sent to Appleway by Defendant and those partners or co-conspirators acting with him, who knew its true character when sent to Appleway.

138.     Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 2000 Freightliner purchased by Orlando Seastrunk pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc.* and related documents.

139.    Defendant benefited as a result of the sale of said Motor Vehicle Retail Installment Sales Contract to Appleway Equipment Leasing, Inc., and related documents.

140.    **The Sellers Fraudulent Transaction**   Defendant sold to Plaintiff a 1999 Kenworth VIN #1XKWD69X3XR786601 as a part of a lease to Carroll Sellers.

141.    The sales person for the Sellers transaction was Defendant Chris Mehaffie.

142.    Plaintiff leased said 1999 Kenworth to Carroll Sellers pursuant to a written Lease Agreement, and related documents.

143.    Defendant represented to Plaintiff that Sellers had paid a down payment in the amount of $12,500.00 by delivery of a copy of a cashier's check issued by Prosperity Bank.

144.    The copy of the cashier's check was, upon information and belief, a fake. Defendant knew of the true character of the representation when transmitted to Appleway. Defendant intended that Appleway rely on the document.  Appleway reasonably relied on the document in entering into the Lease and was inducted into the lease by this representation.

145.    Appleway has sustained damage in reliance upon the check copy as represented, which, it is believed, was a forgery.

146.    **The Thomas Transaction (cash receipt)**   Defendant sold by way of a *Motor Vehicle Retail Installment Sales Contract* a 1998 International VIN #2HSFHAMR1WCO47998 to Carol A. Thomas.

147.    The salesperson for the Thomas transaction was Defendant Chris Mehaffie, Finance Manager / VP.

148.    Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* of said 1998 International purchased by Thomas pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract* to Appleway Equipment Leasing, Inc., and related documents.

149.    Defendant represented to Plaintiff that a down payment had been paid by Thomas in the amount of $9,000.00 by delivery of a copy of a cash receipt #344793.

150.    The cash receipt was either false or the money was never accounted for. Defendant knew that the representation was false when transmitted to Appleway.  Defendant intended that Appleway rely on the false document.   Appleway reasonably relied on the document in purchasing the contract and was induced into buying the contract by this misrepresentation.

151.    **The Jamie Fraudulent Transaction** Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract a 2001 Peterbilt 387 tractor / truck, VIN # XP7DU9X31D559643 to William A. Jamie.

152.    The salesperson for the Jamie transaction was Chris Mehaffie.

153.    Defendant represented to Plaintiff that Jamie had paid cash down payment in the amount of $9,000.00 by delivery of cash receipt #344401.

154.    William A. Jamie did not pay any sum of money as a down payment to Defendant and the receipt was pure fiction. The bogus receipt was created to induce reliance by Appleway.   The document was sent to Appleway by Defendant and those partners or co-conspirators acting with him, who knew its true character when sent to Appleway and intended that Appleway rely upon the document.

155.    In reasonable reliance on the false document, Plaintiff was induced to purchase the *Motor Vehicle Retail Installment Sales Contract* of said 2001 tractor/truck purchased by Jamie, pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract*, and related documents.

156.     Plaintiff has been damaged as the truck either was missing or declined in value and the contract is worthless.

157.     **<u>Duran Fraudulent Contract</u>**  Defendant sold by way of a Motor Vehicle Retail Installment Sales Contract to Rosa Duran on or about March 17, 2007 a 2001 Kenworth T2000 Conventional VIN # 1XKTDB9X61J868789.

158.     The salesperson who sold said tractor / truck to Duran was Chris Mehaffie, V.P and Finance Manager.

159.     Plaintiff required that Duran pay a down payment to D & L in the amount of $6,500.00.

160.     Defendant provided to Plaintiff proof of a down payment in the amount of $6,500.00 by means of cash receipt #344437.   The cash receipt was a lie.  Chris Mehaffie knew it was a lie when he submitted it to Appleway and intended that Appleway rely on the document.

161.     Chris Mehaffie told Duran that only a $3,000.00 down payment was required.

162.     Duran paid D&L (Chris Mehaffie's partner and alter-ego) the sum of $3,000.00, not the stated $6,500.  Defendant intentionally misrepresented to Plaintiff the amount of the Duran down payment to causing Plaintiff to purchase the Motor Vehicle Retail Installment Sales Contract with Duran.

163.     In reasonable reliance upon Defendant's knowing misrepresentation about the size of the down payment, Plaintiff purchased the *Motor Vehicle Retail Installment Sales Contract* relating to said 2001 tractor/truck purchased by Duran pursuant to a written *Assignment of Motor Vehicle Retail Installment Sales Contract*, and related documents.

164.     As a result of this fraud, Plaintiff has been injured because the vehicle is either missing or drastically reduced in value and the contract is worthless.

165.    **Misrepresentations** .  Defendant forged copies of checks, cashier's checks and generated fictional receipts and false notary signatures.  Defendant has misled the Plaintiff as to the amounts of the down payments represented to have been paid by customers, not presently known by Plaintiff. He made these misrepresentations with the intent that the Plaintiff rely upon them and enter into further transactions with his partners and co-conspirators for the benefit of the conspiracy/partnership.  Plaintiff paid money to the conspiracy in reasonable reliance on the misrepresentations and to acquire the worthless contracts.

166.    Plaintiff has paid all sums of money necessary to purchase said *Motor Vehicle Retail Installment Sales Contract* transactions with Defendant.  However, the fraud-based contracts are worthless and the vehicles are, in many instances, missing or worth nearly nothing.

167.    Plaintiff has been damaged by each contract that falsely states a down payment, contains a false signature and/or false notary seal.  Plaintiff has also been damaged because its collateral is damaged.

## FIRST CAUSE OF ACTION
### SECTION 523 (a)

168.    The Debtor is not a consumer under 11 U.S.C. §102(8).  The Debtor's debts are primarily business debts.  These debts are business debts.

169.    The Debtor made misrepresentations to the Defendant, such as the amounts of down payments, the existence of checks, the existence of cash deposits, the existence of notarized documents, and other misrepresentations, as described above.  He also represented his capacity as an officer of D&L Trucking.  He also represented his capacity as a director and/or manager of D&L.  D&L Trucking allowed him to make these representations.

170.    The Debtor used D&L as a sham to perpetrate a fraud on Appleway for his and his father's own personal benefit.

171.    The Debtor and D&L were general partners with an agreement that the goal of the partnership should be to obtain money from Appleway by selling or leasing trucks.  In furtherance of the partnership goals, Defendant made the fraudulent misrepresentations referenced in the above paragraphs.  Also, Defendant would act for D&L and D&L would act on Defendant's behalf as part of this partnership.  Each of the partners, D&L and the Defendant, are liable for the debts of each partner in their partnership.  The fraud of D&L and the Debtor is imputed to the Debtor.

172.    D&L (and its principals) and the Debtors were conspirators acting in a conspiracy to defraud Appleway and breach D&L's fiduciary duties to Appleway.  They conspired together to form a systematic scheme by which Plaintiff would be defrauded. The purpose of the conspiracy was to induce the Plaintiff into entering into those numerous contracts titled: Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. The means by which the scheme was carried out was that customer down payments, as required by the Motor Vehicle Retail Installment Sales Contract and Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc., were in the form of falsified or altered financial documents, namely personal checks, cashier's checks, and/or cash receipts.  Plaintiff had no basis upon which to know that said financial instruments had been altered or falsified.  Plaintiff entered into said Assignments on the basis of the representations and documents provided by Defendants.   Plaintiff has been damaged as a result of this Civil Conspiracy to commit fraud and breaches of fiduciary duty and/or maliciously injure Appleway.

173.    Appleway acted in reasonable reliance on the numerous misrepresentations referenced herein.   Appleway released collateral and purchased contracts from the conspiracy/partnership of which Defendant was a part.   Appleway has lost that collateral as a result of the fraud and has been damaged in other ways shown herein.

174.    When one holds property for the benefit of another, coupled with responsibility to account for that money, they are the <u>fiduciary</u> of the person for whom they hold the property. Defendant and his partner D&L held Appleway's property with the duty to account for it and not to give it away or sell it without down payments or authorization. The Defendant made misrepresentations to obtain the benefit of the property entrusted to him in defalcation of his fiduciary duties.   For many reasons, not the least of which was the conspiracy's contractual assumption of fiduciary duties, Defendant owes Appleway for his defalcation in a fiduciary capacity.   This is not a mere innocent or negligent breach.   Here, the Debtor went out of his way to lie to his fiduciary to obtain the benefit of the property.   Defendant owes Appleway for his fraud, defalcation, and larceny while he acted in a fiduciary capacity to Appleway.

175.    The Defendant could have kept business records and proper accounting of the down payments.   Instead, Defendant manufactured false check copies and other documents.   His participation in the falsification of these documents was willful and malicious and caused damage to Appleway.   It also damaged Appleway's property, as the trucks were subsequently sold and damaged by the unqualified purchasers.   Defendant's actions were willful, intentional and/or malicious and designed to injure the property of Appleway.   Specifically, by knowing that the fictional checks for down payments would let buyers drive large trucks off the lot without payments, Defendant intended that the trucks depreciate (or disappear) without any security for Appleway.   Defendant owes for this willful and malicious injury Appleway and its property.

176.     Under 11 U.S.C. 523(a)(2),(4) and/or (6), the Debts of Debtor to Appleway are non-dischargeable.

## SECOND CAUSE OF ACTION
## MATERIAL MISREPRESENTATION OF FACT - RECISION OF CONTRACT

177.     Plaintiff has fully performed its obligations under the various written Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. contracts and related documents.

178.     Plaintiff relied on the representations of the Defendant that the down payments required by Plaintiff, and represented to have been paid by the customers desiring to purchase said vehicles, had actually been paid by the customers to Defendant according to the terms of the Motor Vehicle Retail Installment Sales Contract.

179.     Plaintiff had a right to rely on the representations made by Defendant and its agents concerning the payment of down payments.

180.     Defendant's misrepresentation of the down payment amounts caused plaintiff to purchase Motor Vehicle Retail Installment Sales Contracts with customers of the D & L Conspiracy by means of Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc.

181.     Plaintiff would not have purchased said contracts had there not been the actual payment of the required down payment the amounts represented by Defendant by means of photocopied financial instruments.

182.     Plaintiff has been damaged as a result of the material misrepresentations made by Defendant so as to induce Plaintiff to enter into Assignments of the Motor Vehicle Retail Installment Sales Contract with customers of the D & L Conspiracy.

183.    Plaintiff has been further damaged by material misrepresentations of fact that are not presently known to Plaintiff.

184.    The remedy for the material misrepresentation of facts is that the contracts between Plaintiff and Defendant be rescinded and that any damages, including but not limited to the expectation of profits and investment amounts suffered by Plaintiff, be paid by Defendant.

185.    Plaintiff is entitled to an award of its attorney fees and costs, as agreed to in writing by D&L as Defendant is the alter-ego and/or general partner of D&L and a member of the D&L Conspiracy.

### THIRD CAUSE OF ACTION – FRAUD

186.    Defendant engaged in a systematic scheme of delivering altered or fabricated checks, cashier's checks, cash receipts, and possibly other financial instruments to Plaintiff, representing the down payment required by Plaintiff as a condition precedent to purchasing each Motor Vehicle Retail Installment Sales Contract from his alter-ego/partner D & L.

187.    Defendant was aware of the requirement of Plaintiff that a down payment was to be actually paid by the customer in the required amount, as a condition precedent to purchasing said contract.

188.    Defendant agreed to Plaintiff's requirement in writing, as is more fully set forth in the Motor Vehicle Retail Installment Sales Contract and the Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc., that an actual down payment was to be paid the customer.

189.    Defendant delivered said altered or fabricated checks, cash receipts, and/ or other financial instruments knowingly to Plaintiff, in order to induce Plaintiff into entering into

each Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. under false pretenses.

190.     Plaintiff would not have engaged in any transactions with the Defendant had it been aware that false and misleading representations led to its entering into each Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. with D&L customers

191.     Defendant engaged in a systematic scheme to defraud Plaintiff and cause Plaintiff to enter into each Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc.

192.     Defendant benefited from its acts of defrauding Plaintiff by means of the altered or fabricated financial documents.

193.     Plaintiff has been injured as a result of the acts of Defendant.

194.     Plaintiff is entitled to rescind each transaction with Defendant, and to be repaid its investment and expectation of profits on each contract purchased.

### **FOURTH CAUSE OF ACTION – BREACH OF CONTRACT**

195.     Plaintiff entered into Assignments of Motor Vehicle Retail Installment Sales Contract with D & L by purchasing said Motor Vehicle Retail Installment Sales Contracts.

196.     Plaintiff has fully performed all obligations required of Plaintiff in each contract entered into with Defendant.

197.     Defendant breached a material term and condition of said written contracts by failing to disclose the amount, if any, of the down payment actually paid by the customer directly to Defendant.

198.     Plaintiff based its decisions to enter into Assignments of Motor Vehicle Retail Installment Sales Contracts on the representations made by Defendant.

199.     Defendant failed to perform its obligations under the Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. by not requiring the stated down payment to actually be paid by the customer.

200.     Plaintiff has been damaged as a result of the Defendant' breach of each contract.

201.     Pursuant to the Assignment Of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc., Plaintiff is entitled to rescind each contract.

202.     Plaintiff is entitled to an award of its attorney fees and costs, as agreed to in writing by Defendant.


## FIFTH CAUSE OF ACTION – WASHINGTON CONSUMER PROTECTION ACT R.C.W. 19.86, ET. SEQ.

203.     Defendant was in the business of selling trucks and trailers such as the ones specifically described and set forth herein.

204.     Defendant was aware that Plaintiff required a down payment in a specific amount to be actually paid by the customer to the Defendant as a part of the transaction.

205.     Defendant completed the various documents that together comprised the Motor Vehicle Retail Installment Sales Contract assigned to the Plaintiff in the ordinary course of D&L's business.

206.     Defendant was aware that a condition precedent to Plaintiff entering into an Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. was the customer paying the requisite down payment to Defendant, along with delivery of proof of said actual down payment to Plaintiff.

207.     The manner in which the down payment was represented as having been paid by Defendant, when said payment had not actually been paid by the customer in Plaintiff's required amount, was an unfair and deceptive trade practice.

208.     The use of photocopied, altered or fabricated personal checks, cashier's checks, cash receipts, and possibly other financial documents representing the customer's down payment, was done to intentionally mislead Plaintiff and to cause Plaintiff to purchase said contract from Defendant.

209.     Plaintiff entered into each Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc. as a result of the unfair and deceptive trade practice, namely the representations that a down payment had actually been paid by the customer directly to the Defendant when that was not correct.

210.     Plaintiff has been damaged as a result of each transaction involving an unfair and deceptive trade practice of the Defendant in amounts that will be proven at the time of trial.

211.     Each Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, that misstates the down payment paid by the customer, is a separate violation of the Washington Consumer Protection Act.

212.     Defendant and his partners and alter-egos have benefited as a result of these unfair and deceptive trade practices.

213.     Plaintiff is also entitled to treble damages equal to the statutory maximum for each violation of the Washington Consumer Protection Act and attorney fees as provided by statute.

214.     Alternatively, Plaintiff is entitled to its attorney fees and costs pursuant to the contracts entered into between Plaintiff and Defendant.

## SIXTH CAUSE OF ACTION – ACCOUNTING

215.     All prior allegations are restated as if set forth herein

216.     Plaintiff has entered into a total of 51 transactions accomplished through Defendant's use of his alter-ego and partnership with D&L, of which 20 remain on the books of Plaintiff.

217.     A fiduciary relationship existed between Plaintiff and Defendant, namely that the customer would pay to the Defendant the required down payment as a condition precedent to Plaintiff entering into an Assignment of Motor Vehicle Retail Installment Sales Contract To Appleway Equipment Leasing, Inc., and Defendant would provide a copy of the financial instrument evidencing payment of said down payment.

218.     Defendant breached that fiduciary relationship by delivering to Plaintiff altered or fabricated checks, cashier's checks and possibly other financial documents, in order to mislead Plaintiff into believing that the required down payments had been paid.

219.     Because of the number of transactions, Plaintiff cannot reasonably discover each transaction in which the down payment had not actually been paid, or not paid in those amounts required by Plaintiff.

220.     Defendant has benefited as a result of its misrepresentations to Plaintiff.

221.     Plaintiff has been injured and continues to be injured as a result of the acts of Defendant.

## SEVENTH CAUSE OF ACTION    ALTER–EGO / PARTNERSHIP LIABILITY

222.     Alter Ego is in the nature of a remedy, not a cause of action.  Nevertheless, the Plaintiff puts Defendant on notice that the fraud perpetrated with D&L was part of a conspiracy,

was using D&L as a sham to perpetrate a fraud, and was part of a general partnership between Defendant and D&L.

223.     Thus, to the extent any actions are taken by one member of the D&L Conspiracy (consisting of any combination of the Defendant, his father, D&L Trucking, D&M Trucking, and/or Larry Marsh) to further that conspiracy to defraud Appleway, that debt will be imputed to the Debtor and non-dischargeable.

[This Space Intentionally Left Blank]

WHEREFORE, Plaintiff prays that the Defendant be cited to appear and answer, and that:

    i.    The debts from Defendant to Appleway be declared non-dischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4) and 523(a)(6);

    ii.    All contracts purchased by Plaintiff from Defendant be rescinded, and that those sums of money paid by Plaintiff to Defendant be repaid to Plaintiff;

    iii.    Plaintiff be awarded all profit expectations related to each rescinded contract;

    iv.    Defendant, at his own expense, be ordered to have an audit of his books and records by an independent Certified Public Accountant;

    v.    Defendant be found liable for those damages sustained by Plaintiff;

    vi.    Plaintiff be awarded costs of suit;

    vii.    Plaintiff be awarded reasonable attorneys fees and costs;

    viii.    Plaintiff be awarded treble damages against Defendant as provided by R.C.W. 19.86, to the statutory maximum of $10,000.00 for each violation by Defendant under the Washington Consumer Protection Act;

    ix.    That the Court impose liability upon the Debtor for the acts of his partnership, alter-ego and conspiracy;

    x.    That the bankruptcy claims based on this suit be liquidated; and that

    xi.    Plaintiff be awarded all costs that have been necessarily incurred in this case; and

    xii.    The Court grant such other and further relief as is just and proper.

Dated: June 19, 2009.

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:   _/s/ Hugh M. Ray, III_____
    HUGH M. RAY, III
    State Bar No. 24004246
    11 East Greenway Plaza, Suite 1400
    Houston, Texas 77046
    Telephone: 713.961.9045
    Facsimile: 713.961.5341

ATTORNEYS FOR PLAINTIFF,
APPLEWAY EQUIPMENT LEASING, INC.